DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) Criminal No. 2012-015 |
| Plaintiff, | ) |
| v. | ) |
| **CLARENCE ALFONSO WILLIAMS,** | ) |
| Defendant. | ) |

**APPEARANCES:**

**Alphonso A. Andrews, AUSA**
Office of the United States Attorney
St. Croix, U.S. Virgin Islands
    *For the United States of America,*

**Natalie Nelson Tang How, Esq.**
Law Office of Natalie Nelson, PLLC
St. Croix, U.S. Virgin Islands
    *For the Defendant.*

## MEMORANDUM OPINION

FINCH, Senior Judge.

This matter comes before the Court on Defendant Clarence Alfonso Williams's ("Williams") motion to withdraw his guilty plea, the United States of America's (the "Government") response in opposition thereto, and Williams's reply. (*See* ECF Nos. 214, 221, 222.) For the reasons stated herein, Williams's motion to withdraw his guilty plea will be denied.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Criminal charges against Williams in the state of Texas arose from events that occurred from on or about December 1, 2009 through on or about April 5, 2012. Agents from the Fort Worth Division of the United States Postal Inspection Service ("USPIS"), U.S. Customs and Border Protection Service ("CBP"), and the Drug Enforcement Agency ("DEA") investigated a drug trafficking organization engaged in money laundering and marijuana trafficking using the U.S. Mail. The investigation revealed that over 120 drug parcels were mailed by the drug trafficking organization from Grand Prairie, Texas and Arlington, Texas to St. Croix, U.S. Virgin Islands.

On several occasions between December 2010 and April 2011, Williams was captured on surveillance video at the Richmond Station, Christiansted, St. Croix purchasing money orders. The money orders were shipped via U.S. Mail to coconspirators in the Northern District of Texas. In April 2012, a cooperating defendant ("CD1") identified the Williams as someone with whom the CD1 communicated regarding the trafficking of marijuana in St. Croix. CD1 indicated that Williams provided names and addresses of where he wanted marijuana sent. CD1 stated that once the marijuana packages were mailed, CD1 would give the tracking information to Williams.

On March 27, 2012, a complaint was filed in the Northern District of Texas, and a warrant was issued for Williams's arrest. On April 12, 2012, Williams was arrested, advised of his rights, and taken into temporary custody. (*See* Return of Warrant for

Arrest, ECF No. 1 at 29, Attach. 1-7.) On April 13, 2012, Williams was released on pretrial supervision with conditions.

Pursuant to plea negotiations, Williams was charged in a two-count Information in the District Court of the Virgin Islands, Division of St. Croix on July 2, 2012 (the "Information"), charging Williams with money laundering and intent to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 1956. (*See* ECF No. 146.) The conduct in the Information occurred on or about December 28, 2010 through on or about April 20, 2012.

Williams alleges that due to miscommunication with his former Federal Public Defender ("FPD") and persistent badgering and intimidation by the Government, he requested a recess in the initial plea negotiations in this matter, because he was "uncomfortable with the course of events." (*See* Mot. to Withdraw Guilty Plea, ECF No. 214 at 2.) On August 7, 2012, the Court appointed new counsel, Natalie Nelson Tang How, Esq. ("Attorney Tang How"), to represent Williams. (*See* ECF Nos. 158, 159.)

On September 4, 2012, Williams, represented by Attorney Tang How, appeared before U.S. Magistrate Judge George W. Cannon for a plea hearing. Being satisfied that Williams's plea was knowing and voluntary, Magistrate Cannon recommended that Williams's plea be accepted. On October 10, 2012, the Honorable Wilma A. Lewis accepted and adjudicated Williams's plea of guilty. (ECF No. 181.)

Now, eight months after adjudication of his guilty plea and a few days before sentencing, Williams moves to withdraw his guilty plea on grounds that it was not

entered into knowingly and voluntarily. Williams asserts that he was previously represented by the FPD when the Government presented him with the initial plea offer, which he rejected allegedly due to changing representations by the Government. He asserts that he attempted to cooperate with the Government, and was given an ultimatum that would result in the dismissal of his daughter from the criminal complaint in Texas only if he agreed to plead guilty. Despite good faith attempts to continue plea negotiations, "Williams remained skeptical and was operating under the threat that if he failed to plea he would be transferred to Waco, Texas to stand trial, as charges would be filed against him in that state." (Mot. to Withdraw Guilty Plea, ECF No. 214 at 2.) Williams also asserts that he was "being placed in a precarious position as it related to plea deals being entered into with other similarly situated co-defendants[,]" and that he felt forced to enter into a conspiracy plea based on misleading representations which over time have become clear to him. (*Id.* at 3.) Williams further asserts that the Government has presented no evidence that he possessed and/or conspired to distribute marijuana. Thus, Williams contends that he did not enter into the plea agreement knowingly and voluntarily.

      The Government argues that Williams fails to meet the substantial burden required to assert actual innocence and puts forth only bald assertions that he was not involved in the conspiracy. The Government further argues that during the April 25, 2012 proffer interview, Williams acknowledged his role in the drug trafficking scheme. Williams told investigators that he began taking part in drug trafficking scheme in 2009 by receiving

drug parcels, paying co-conspirators to receive drug parcels, and sending payment to Texas for the drugs. Williams made statements in the proffer interview accepting responsibility for more than 80 kilograms of marijuana, but now, the Government argues, he attempts to retract those statements based on bald assertions. Thus, the Government argues that Williams's motion to withdraw his guilty plea should be denied because: (1) he fails to offer any credible facts to support his claims of innocence; (2) his reasons for withdrawing the plea are inadequate; and (3) an eleventh-hour withdrawal of this kind would prejudice the Government. (Gov't Resp., ECF No. 221 at 4.)

Williams replies that the Court should be wary of accepting his plea because he maintained his innocence at key stages of the prosecution such as the plea hearing. (*See* ECF No. 222 at 3.) Williams argues that the only reason he took the plea was because he feared he would be tried in Texas, and, more importantly, he feared his daughter would also be prosecuted. (*See id.*) Therefore, Williams argues that he was under "duress" to plead guilty despite the fact that there was "scant evidence" to convict him. (*See id*. at 3-4.) By entering a plea of guilty, Williams further asserts that he saved his daughter, but in the process, waived several constitutional rights inherent in a criminal trial. (*See id.*) Lastly, Williams argues that there is no evidence to indicate that the Government would be prejudiced by the withdrawal of his plea.

## II. DISCUSSION

### a. Applicable Legal Standards

"[F]or a guilty plea to be valid, it must represent 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Dennis*, --- Fed. App'x ----, 2013 WL 2466574, at *3 (3d Cir. Jun. 10, 2013) (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))). A defendant may withdraw a plea of guilty:

> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
>     (A) the court rejects a plea agreement under Rule 11(c)(5); or
>     (B) the defendant can show a fair and just reason for requesting the withdrawal.

FED. R. CRIM. P. 11(d)(2)(B). In determining whether a defendant has met the substantial burden of showing a "fair and just" reason for requesting the withdrawal, a district court must consider: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones,* 336 F.3d 245, 252 (3d Cir. 2003) (citation omitted).

### b. Analysis

During the plea hearing, Williams vacillated between assertions that he was guilty or not guilty to the offenses charged and expressed concern that the charges against his daughter would only be dismissed if he pleaded guilty. Magistrate Cannon methodically explained the charges to Williams and tried to ascertain whether he understood the nature and consequences of the plea. The following colloquy took place between the Court and Williams the plea hearing:

> Q [THE COURT]    I am going to read to you the [I]nformation. . . . How do you plead to count one in the [I]nformation?
> A [WILLIAMS]    Count one of the [I]nformation I plead not guilty to count one because the marijuana that was sent actually had no (inaudible). No conspiracy to count one.
> Q    You plead to the conspiracy of count one?

A    No, Your Honor.
Q    You do not.
A    I do not.
Q    Okay. So what do you understand to be the conspiracy?
A    Conspiracy is when two or more people conspire to distribute marijuana.
Q    Okay. And so you do not agree that you conspired?
A    I did not agree to conspire of count one of conspiracy.
Q    Did you know that that's what you agreed to in the plea agreement?
A    I know that's what I plead to based on my daughter was incarcerated in the same case and she was dismissed on this case. In order for me let her be dismissed on this case, I have to take responsibility of it Your Honor.
Q    Okay. But do you understand, Mr. Williams, as part of what you told me in the plea agreement, you indicated that you plead guilty to count one. Do you understand that?
A    Yes, sir, Your Honor.
Q    But now as I ask you, you say not guilty. So I can't take your not guilty plea and have you plead guilty. I have to stop this process. Do you understand that?
A    I understand what you say, Your Honor.
Q    Okay. So there can be no plea then if you're not guilty.
A    Said plead guilty or not of count one or count two.
Q    Okay. But you need to understand because I don't want any confusion with you and I definitely don't want no confusion with your attorney and the Government.
    . . . .
Q    Okay. So I don't, I'm not here to confuse you and I definitely don't want nobody tricking you. You're not guilty then that means you can't plead guilty. That means you'll have to have a trial. Do you understand that?
    . . . .
A    Yeah, understanding what I feel about the count, I would have to plead guilty to count one based on what is happening in this case. Count one and count two.
Q    Okay. Mr. Williams, how you feel, I respect that, but I can't make you do something that's not true. That's why I asked you is it true. I asked you that. Because I don't want you to be doing something that's not true. That's not correct.
A    I understand that, Your Honor. But . . . I know for a fact, according to discovery, that they have no (inaudible) to prove that I'm guilty. But I have to plead guilty. So I'm telling yes, I will plead guilty to count one and count two.
Q    But I just asked you, you just told me not guilty. I just asked you how do you plead. You told me not guilty.
A    (inaudible) guilty of count one.
    . . . .
Q    Make sure you know what you're doing, because there ain't no backing out of this. You understand that?

> A    Yes, sir.
> Q    All right. Let me read it again, count one. . . . How do you plead to that charge, Mr. Williams?
> A    Guilty Your Honor.
> Q    Count two . . . . How do you plead to count two of the [I]nformation?
> A    Guilty Your Honor.
>     . . . .
> Q    One last time, Mr. Williams, is there any question[], anything that you want to ask to clarify, anything about the sentencing, the plea agreement this afternoon?
> A    No, Your Honor.
> Q    You understand everything?
> A    Yes, sir.
> Q    And one last time to you, you're doing it of your own free will, the plea. Are you doing this voluntarily of your own free will?
> A    Yes, sir.
> Q    Nobody is forcing you?
> A    No, sir.
> Q    Not even your daughter?
> A    No.

(Plea Hr'g Sept. 4, 2012, ECF No. 220 at 17-23.) Williams assured the Court that he understood the consequences of his guilty plea and that his plea was voluntary, and pled guilty to the two-count [I]nformation.

With respect to the first factor iterated in *Jones*, the Court of Appeals for the Third Circuit states that:

> "[b]ald assertions of innocence are insufficient . . . . 'Assertions of innocence must be buttressed by facts in the record that support a claimed defense.'" When asserting his innocence, a defendant must also provide a sufficient explanation for the contradictory position he took at his guilty plea hearing.

*Dennis*, 2013 WL 2466574, at *3 (citation omitted). In the motion *sub judice*, the Court has nothing more than Williams's bald assertion of innocence. Williams argues that he was not involved in a conspiracy, but does not assert facts from the record that buttress his claim of innocence. Williams fails to meet his burden as to the first factor.

*United States v. Williams*
Criminal No. 2012-015
Memorandum Opinion
Page 9

      The second factor is the strength of Williams's reasons for withdrawing the plea. Williams asserts that the Government's case against him was weak. The Court finds that Williams's plea of guilty, entered into with the competent assistance and counsel of Attorney Tang How, cannot be withdrawn on the premise that the Government has a "scant" case against him. *See Brady v. United States,* 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . . absent misrepresentation or other impermissible conduct by state agents . . . .").

      Williams also assert his dissatisfaction with his proposed sentence in relation to that of his co-defendants. The plea colloquy demonstrates that Williams had an adequate understanding of the charges to which he was pleading guilty and the direct consequences of his plea. Magistrate Cannon advised Williams that although the U.S. Sentencing Commission Guidelines ("Guidelines") range would not be clear until a Pre-Sentence Report was completed, he would be facing an advisory Guidelines range of 63-78 months, but the sentencing judge could choose to go above 78 months. Williams affirmed that the consequences of his plea were clear to him. (*See* Plea Hr'g Sept. 4, 2012, ECF No. 220 at 10.) "A plea of guilty will not be found to be unknowing and involuntary in the absence of proof that the defendant was not advised of, or did not understand, the direct consequences of his plea." *Parry v. Rosemeyer*, 64 F.3d 110, 114 (3d Cir. 1995), *superseded by statute on other grounds as recognized in Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir. 1996). Moreover, a "simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court." *United States v. Johnson,* 345 Fed. App'x 854 (3d Cir. 2009) (citation omitted).

Williams asserts that he was frustrated and distrustful due to changing representations by the Government while represented by the FPD during the initial plea negotiations. Firstly, Williams's guilty plea did not occur while represented by the FPD, but rather, with his current counsel, Attorney Tang How. Secondly, Williams's assertion of duress in pleading guilty simply to secure the dismissal of the charges against his daughter is without merit. The Government acknowledges that it "accepted as true [Williams's] statements regarding his own guilt and responsibility as well as the lack of culpability of his daughter." (Response, ECF No. 221 at 8.) Moreover, the Government dismissed the charges against Williams's daughter on or about May 30, 2012, more than three (3) months before Williams appeared before Magistrate Cannon for the plea hearing. Thus, Williams has failed to demonstrate evidence of threats, coercion, or duress which would warrant a withdrawal of his guilty plea.

The third *Jones* factor requires that the Court examine whether the Government has demonstrated that it would be prejudiced by the withdrawal of the guilty plea. The Court need not address this factor where Williams has failed to meet his burden as the first two factors. *See Jones*, 336 F.3d at 255 (finding that the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea) (citing *United States v. Harris,* 44 F.3d 1206, 1210 (3d Cir. 1995)). Having considered the premises, the Court finds that Williams has failed to demonstrate the existence of a "fair and just" reason to withdraw his guilty plea.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Williams's motion to withdraw his guilty plea. An appropriate order follows.

**DATED**: July 4, 2013

**E N T E R:**

/s/ Raymond L. Finch
_____
**RAYMOND L. FINCH
SENIOR DISTRICT JUDGE**